FOURNET, Chief Justice.
 

 This is an appeal by the plaintiff, Mrs. Forrest Stabler, from a judgment granting her a divorce from her husband, the defendant, but rejecting her demand for alimony. In his Reasons for Judgment, the District Judge stated that evidence introduced on the trial showed that the wife owns property valued in excess of $20,000; he held, therefore, that the case falls squarely under the rule announced by this Court
 
 in
 
 Smith v. Smith, 217 La. 646, 47 So.2d 32, i. e., that a wife who is in possession of property and assets valued at $20,000' cannot be said to be without sufficient means for her maintenance and therefore entitled to alimony under the provisions of Article 160 of the LSA-Civil Code.
 

 It is the plaintiff’s contention that the above rule is inapplicable to the facts of this case because
 
 in
 
 the Smith case the capital which the wife had at the time of the divorce was derived from the partition of the community of acquets and gains formerly existing between her and her husband — hence the Court’s conclusion that it would be inequitable to cause the husband to deplete his capital in order to pay alimony, and at the same time permit the wife to retain her capital intact; whereas in this case the wife had (in 1932) obtained a judgment of separation of property from her husband due to his adjudication as a bankrupt, so that her capital consists solely of separate property acquired from her mother in 1939, without payment of any cash consideration; that in view of her
 
 *73
 
 illness and physical condition the revenue from these properties is not sufficient for her maintenance, and that her husband, who is possessed of an estate worth $50,000 and had a net yearly income for the four years preceding trial below in excess of $12,000, should supplement her income to meet her needs, which she estimates at $450 per month.
 

 The provision of our law which authorizes payment of alimony after divorce is found in Article 160 of the LSA-Civil Code, which declares, in pertinent part: "If the wife who has obtained the divorce has not sufficient means for her maintenance, the Court may allow her in its discretion, out of the property and earnings of her husband, alimony which shall not exceed one-third of his income * *
 

 The test by which the Court must be guided in fixing the amount of the alimony or pension in such cases is not what it takes to support the divorced wife in the manner in which she has been accustomed to live, but what will provide her with “ ‘sufficient means for her maintenance.’ ” Fortier v. Gelpi, 195 La. 449, at page 456, 197 So. 138, at page 140; and in the recent case of Smith v. Smith, 217 La. 646, 47 So.2d 32, we said: “ * * * Article 160 makes no reference to the wife’s income and takes into consideration only her means of maintenance and whether they are sufficient or not. In other words, under Article 160, the Court is not concerned with the wife’s income as such but only with the means she has, including income, and whether they are sufficient^for her maintenance. * * * It becomes necessary, therefore, to consider what is meant by the phrase ‘sufficient means for her maintenance’ * * * Maintenance may be said to include primarily food, shelter and clothing, and certainly property or means amounting to $20,000 ought to provide those necessities very readily. * * * ” 217 La. at pages 653, 654, 655, 47 So.2d at page 35.
 

 According to the facts as disclosed by the record, on February 17, 1939, the plaintiff acquired from her mother, Mrs. Mary B. Heath, two parcels of land with improvements thereon in Istrouma, a suburb of Baton Rouge, for a recited consideration of $4,100 — $500 cash and assumption of an outstanding mortgage of $3,600. The property was later refinanced and an additional loan secured thereon. Two rental houses are on each parcel, and the combined appraised value of the properties is approximately $25,000. Two houses bring a revenue of $60 per month each, the third and fourth, $35 and $40 per month respectively. The combined income from the latter two has customarily been applied to reduction of the mortgage, which, at the date of trial (1952) had a balance due of $3,862.38. .It further appears that according to the public records, the plaintiff and her brother acquired from their mother on April 26, 1935, each an undivided half interest in three additional pieces of real estate in Baton Rouge — a duplex on Boyd Avenue, an un
 
 *75
 
 improved lot in Hundred Oaks subdivision, and a residence on WisterianStreet.
 
 [1]
 

 Under these facts we cannot say that the plaintiff is without sufficient means for her maintenance. She has no dependents; lives with her aged mother, in the house acquired from the mother on Wisteria Street; owns her own automobile; and receives $120 per month from the rental properties after making monthly payments on the mortgage. The proof offered in support of her claim that trips to the West are necessary to her health is not convincing.
 

 The record contains testimony that the plaintiff, who is 55 years of age, suffers from asthma. She claims that a trip to the West for at least a month each year is necessary to her health, that on such trips (because of the sudden nature of her attacks) she must take her mother, and that the amount necessary to defray expenses while away from home is $20 a day, not including transportation. Her physician diagnosed her condition as chronic bronchitis with an asthmatic basis. While he testified that she is subject to acute flare-ups of at least a week’s duration in the winter months of December, January and «February, necessitatiffg daily visits from him, and affirmed that persons so afflicted are benefited by the dry, hot climate of certain parts of the West, as we understand his appraisal of her condition she could not hope for anything except temporary relief from such sojourns; and while they would be beneficial, they are not a necessity.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 [1]
 

 . The uncontradicted testimony shows that these three conveyances, though in the form of cash sales, were made without consideration and with the understanding between the parties that the transfers were not to become effective until the mother’s death; that the rentals from the duplex, totaling $85 a month, are received by the mother, who testified to the age of 86 years and who also receives a pension of $100 a month from the Telephone Company. The plaintiff and her mother reside in the residence on Wisteria Street, where the defendant also lived prior to the separation.