221 So.2d 40

Mrs. Catherine BRENAN, wife of Zenon Joseph MONTZ, Jr.,

v.

Zenon Joseph MONTZ, Jr.

No. 49311.

March 31, 1969.

Drury, Lozes, Young & Curry, James H. Drury, New Orleans, for plaintiff in rule-appellant.

Cabral & Cabral, Harry R. Cabral, Jr., Metairie, for defendant in rule-appellee.

FOURNET, Chief Justice.

Zenon Joseph Montz, Jr., whose wife, Mrs. Catherine Brenan, had secured a judgment of separation from bed and board from him on the 16th day of April, 1963, and after more than one year and 60 days had elapsed without reconciliation, secured a judgment of final divorce on July 6, 1966 wherein the wife was awarded alimony at the rate of $250 per month, from which judgment no appeal was taken; subsequently, however, on May 2, 1967 he caused a rule to be issued directing his ex-wife to show cause why the alimony should not be terminated, or in the alternative, reduced. The matter is now before us

pursuant to a writ of certiorari issued by this court, 252 La. 473, 211 So.2d 332, on the application of Mr. Montz in order that we might review the judgment of the Court of Appeal for the Fourth Circuit affirming the judgment of the district court dated July 14, 1967 dismissing the rule. 209 So. 2d 799.

Relying on the jurisprudence of this court that the wife holding assets of $20,000 cannot be said to be without sufficient means for her support as pronounced in the case of Smith v. Smith, 217 La. 646, 47 So.2d 32, relator contends that his former wife is not entitled to alimony under the provisions of L.S.A.–Civil Code Article 160 as amended[1] as she has unencumbered property valued in excess of $20,000, $6,000 of which is in cash.

The court of appeal, like the district court, gave no consideration to the jurisprudence of this court relative to the rights of the wife to alimony under article 160. The court stating that "it is our opinion that Mrs. Montz is in necessitous circumstances considering her age, her inability to work, her medical expenses, cost of food, clothing and the maintenance and upkeep

---

1. "When the wife has not been at fault, and she has not sufficient means for her support, the court may allow her, out of the property and earnings of the husband, alimony which shall not exceed one-third of his income when:

(1) * * *

(2) The husband obtains a divorce on the ground that he and his wife have been living separate and apart, or on the ground that there has been no reconciliation between the spouses after a judgment of separation from bed and board, for specified period of time;

(3) * * *

This alimony shall be revoked if it becomes unnecessary, and terminates if the wife remarries."

of the home," held, "Under the circumstances, we cannot say that the trial Judge abused his discretion in refusing to eliminate or reduce the award of alimony of $250.00 which is within the prescribed one-third of the husband's earnings."

In the Smith case we distinguished alimony under L.S.A.–Civil Code Article 148 from that in article 160 pointing out that the rights of the wife to alimony pendente lite under article 148 is based on the husband's obligation as prescribed under Civil Code article 120,[2] whereas following the divorce, there being no longer an obligation on the part of the husband to support his ex-wife, the redactors of our Code in their wisdom in including article 160, and the law makers in adopting the same, sought to provide for the wife without sufficient means for her support alimony to be fixed by the trial judge in his sound discretion to be paid by the husband from his property and income and not to exceed one-third of that income. In the course of the opinion the court aptly observed, "Article 160 makes no reference to the wife's income and takes into consideration only her means of maintenance and whether they are sufficient or not. In other words, under Article 160, the Court

is not concerned with the wife's income as such but only with the means she has, including income, and whether they are sufficient for her maintenance. * * *" and in determining what is meant by the phrase "sufficient means for her maintenance"[3] declared, "Maintenance may be said to include primarily food, shelter, and clothing, and certainly property or means amounting to $20,000 ought to provide those necessities very readily. * * *" See also, Brown v. Harris, 225 La. 320, 72 So.2d 746; Stabler v. Stabler, 226 La. 70, 75 So.2d 12; Rabun v. Rabun, 232 La. 1004, 95 So.2d 635.

In the case of Brown v. Harris, supra, like the case at bar, not being an appeal from the judgment granting alimony but an appeal taken on the rule filed by the husband to have his divorced wife show cause why the alimony should not be set aside after the trial judge merely reduced the award, we summarized the jurisprudence as pronounced in the Smith case which stated that "inasmuch as there is no longer an obligation under Article 120 for the husband to support the wife and the alimony is nothing more than a pension or gratuity, the trial judge in fixing the amount is not bound by the manner in which the wife has been accustomed to

2. "The wife is bound to live with her husband and to follow him wherever he chooses to reside; the husband is obliged to receive her and to furnish her with whatever is required for the convenience of life, in proportion to his means and condition."

3. In amending article 160 the legislature in Act No. 48, § 1 of 1964 changed the phrase "sufficient means for her maintenance" to "sufficient means for her support" but we find no difference of meaning intended in this change.

live," and in reversing the judgment of the lower court awarding her alimony held that the wife in partitioning of the community had received $7,315.01 and having a salary of $150 could not be said to be without sufficient means for her support.

In Rabun v. Rabun, supra, the court observed after reviewing the recent decisions of this court that the question of what is to be considered in awarding alimony under Article 160 is no longer open to serious debate, and, in overruling the judgment of the lower court awarding the wife $100 per month alimony, held that the wife in that case who was employed at approximately $125 per month and as a result of the community property settlement had a home valued at $13,000 subject to a mortgage indebtedness of $8,123.33 that she assumed, a promissory note by Mr. Rabun for $2,500 and a Studebaker automobile had "*sufficient means for her maintenance and, therefore, is not entitled to any alimony.*"

In Stabler v. Stabler, supra, the wife, like the case at bar, was unemployed and suffered periodically from chronic bronchitis. The court, nevertheless, held she was not entitled to alimony under Article 160 since she had property valued at $25,000.00 subject to a mortgage of $3,600,

from which she received a net rental income of $120 per month.

█ In light of this constant jurisprudence and considering that at the time the judgment was rendered on the rule, Mrs. Montz owned an unencumbered house with a stipulated value of $18,000 in which she lived, equity in certain stock valued at $6,000, and $6,000 in cash which she has in her house, she cannot be said to be without sufficient means for her support.

█ For the reasons assigned the judgments of the district court and the court of appeal are reversed and it is now ordered, adjudged and decreed that the rule instituted by the husband be made absolute and that he be relieved of further payments of alimony under the judgment of July 6, 1966 as of July 14, 1967.[4] The court, however, availing itself of its discretion under Code of Civil Procedure Article 2164 orders all cost to be taxed against the husband.

BARHAM, Justice (dissenting).

The majority has concluded that the trial court, which was affirmed by the Court of Appeal, abused its discretion, specifically granted by Civil Code Article 160 to allow alimony to the wife upon final divorce in certain instances. The pertinent language

4. The judgment of July 6, 1966, from which no appeal was taken, is a final judgment which could not be changed until a judgment was rendered on a rule seeking the termination, reduction or increase of the alimony set in that judgment.

of Article 160 is: "When the wife * * * has not sufficient means for her support, the court may allow her * * * alimony which shall not exceed one-third of his [the husband's] income * * *." I believe that the majority has erred in interpreting the facts of this case, and even under its factual determination I think it has applied the jurisprudence in light of circumstances and conditions in existence almost 20 years ago which have radically changed.

The stipulated value of the home and furniture owned by Mrs. Montz is $18,000.-00. Mrs. Montz also has $6000.00 in cash or other assets, and an interest in $6000.00 contingent upon her husband's remaining in his present employment which cannot be considered as part of her present assets.

The principal case relied upon by the majority, Smith v. Smith, 217 La. 646, 47 So. 2d 32 (1950), involved a wife who had *assets of $20,000.00* and *income* from these assets of *$35.00 per month*. Each of the other three cases cited by the majority considered a wife with both income and assets whose economic situation was much better than that of the wife in Smith v. Smith.

Since 1950, when the Smith case was decided, the consumer price index shows an increase of approximately 50 per cent, and the purchasing power of the dollar

has declined approximately 50 per cent.[1] We may therefore reasonably conclude that in a comparison with Smith v. Smith, Mrs. Montz's home, presently valued at $18,000.-00, would have had a maximum worth of $12,000.00, and her other assets of $6000.00 would have had an actual worth of $4000.-00, so that her total assets would have been $16,000.00. Additionally, she is ill, has special need for medical care and expenditures, and is totally without independent income. Not only does the majority holding fail to consider the special facts of this case, but it also does not take into consideration the rapid escalation of living costs and the equally rapid decline in the purchasing power of the dollar. This case, and each case, mut be decided upon its own facts in light of all the elements which are so consequential and significant in measuring the need for support.

The majority has extended the prior jurisprudence too far, for Mrs. Montz's financial status is lower than that of any of the wives considered in the cases discussed by the majority. Additionally, the prior jurisprudence and the majority holding here would require a divorced wife to seriously deplete her assets before she could successfully claim alimony. Such a holding cannot even be said to be beneficial to the husband in this case, for if

1. Statistical Abstract of the United States, United States Department of Commerce, Bureau of Census, 1968, p. 341; Survey of Current Business, United States Department of Commerce, Office of Business Economics, February, 1969, p. 8–9. See also Consumer Price Index in the same publications.

the divorced wife depletes her assets, wastefully or otherwise, then the burden upon the husband for monthly support will be increased.

Originally alimony under the Code Napoleon and our Civil Code of 1870 was given to the wife when the divorce was obtained because the husband had been at fault, and some writers have expressed the theory that it was an award in the nature of damages for the wrongful act or delict of the husband. But fault of the husband has no relation to the alimony which is allowed under Article 160 of our present Civil Code, when the wife has not been at fault and the final divorce has been obtained after two-year separation or after prior judgment of separation without reconciliation. The provision for this alimony is a legislative attempt to fix economic responsibility for women who, having been deprived by divorce of their husbands' earnings, are now without means or income for their maintenance. This socio-economic legislation is intended to assign responsibility for the dependency of such divorced women so as to relieve them from destitution and the State from their care.

It is my belief that the trial court did not abuse its discretion, the Court of Appeal properly affirmed, and the majority has erred in interfering with that judgment. I am of the further opinion that the majority holding extends the jurisprudence which already tends to disregard the intent and meaning of Article 160, to the detriment of the litigants, society, and the public fisc.

I respectfully dissent.