267 So.2d 572 (1972)
Mrs. Betty K. FELLOWS, Plaintiff and Appellee,
v.
Charles Lewis FELLOWS, Defendant and Appellant.
No. 3954.
Court of Appeal of Louisiana, Third Circuit.
September 19, 1972.
Rehearing Denied October 25, 1972.
*573 R. Keith Findley, Lake Charles, for defendant-appellant.
Anderson, Leithead, Scott, Boudreau & Savoy, by Everett R. Scott, Jr., Lake Charles, for plaintiff-appellee.
Before FRUGÉ, MILLER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
This is an appeal by Dr. Charles L. Fellows from the portion of a divorce case judgment which ordered him to pay child support in the amount of $667.00 per month each for three minor children. His former wife, Mrs. Betty K. Fellows, in whose favor the divorce was granted, and who was awarded custody of the three children, answered the appeal seeking an increase in the child support awards, and additionally she asks for alimony for herself which was denied her by the trial court.
A brief resume of the facts shows that the parties herein had been married for over 25 years, and that of the marriage five children were born, namely, Elizabeth and Alice, both of whom were over the age of twenty-one years at the time of the divorce action, and Carol Lynn, twenty years of age, a student at the Louisiana State University School of Nursing in New Orleans; Diane, seventeen years of age, and Laura, fifteen years of age. The latter two were attending high school. Difficulties arose between Doctor and Mrs. Fellows culminating in Mrs. Fellows securing a legal separation and ultimately a divorce. The divorce action was tried in the District Court on April 5, 1972, judgment was rendered on that date and signed on April 10, 1972.
The record shows that Dr. Fellows, a successful physician of many years standing, received from his practice, according to the income tax returns, a gross income of approximately $150,000, leaving a net of approximately $102,000 for the year 1970. At the time of trial his 1971 income tax returns were not completed, according to his testimony, but he estimated his gross income for that year to be approximately $160,000 with an estimated net income of approximately $65,000. There obviously exists a great variance in the business expenses of the two years. The community existing between the parties is substantial, it consisting of numerous properties including farm land, commercial buildings, a nursing home, a medical laboratory, cash, stocks, accounts receivable and other assets. After the aforementioned legal separation certain properties were sold voluntarily by Doctor and Mrs. Fellows and certain monies were divided between them, to the extent that at the time of the trial of the divorce action Mrs. Fellows owned some $55,000 in cash, deposited at interest, from which she received approximately $3,600 per year. She also had acquired ownership in some real estate and was recognized as owner of an undivided one-half interest in certain other real property. She owed no personal debts. Except for the voluntary transactions between the parties as mentioned above, the community of acquets and gains between them had not been divided, and by Doctor Fellows' estimate, the value of the undivided community property is in excess of $600,000.

MRS. FELLOWS' RIGHT TO ALIMONY
The right of a wife to be granted alimony after divorce is governed by LSA-Civil Code Article 160, as amended, which reads as follows:
When the wife has not been at fault, and she has not sufficient means for her support, the court may allow her, out of the property and earnings of the husband, alimony which shall not exceed one-third of his income when:
1. The wife obtains a divorce;
2. The husband obtains a divorce on the ground that he and his wife have been living separate and apart, or on the ground that there has been no reconcilitation between the spouses after a judgment *574 of separation from bed and board, for a specified period of time; or
3. The husband obtained a valid divorce from his wife in a court of another state or country which had no jurisdiction over her person.
This alimony shall be revoked if it become unnecessary, and terminates if the wife remarries.
The alimony authorized by LSA-C.C. Art. 160 is in the nature of a pension, hence, it is a mere gratuity which is revocable when it becomes unnecessary. McAfee v. McAfee, 249 So.2d 348. In the case of Montz v. Montz, 253 La. 897, 221 So.2d 40 (1969), our Supreme Court held that where the wife had unincumbered property valued in excess of $20,000 she was not entitled to alimony from her exhusband. This court has recently held in the case of Worley v. Worley, 247 So.2d 254, that:
Our jurisprudence construing LSA-C. C. Art. 160 is now established that in determining whether the wife has "sufficient means for her maintenance" the court must consider any principal and income available to her. Montz v. Montz, 253 La. 897, 221 So.2d 40 (1969); Rabun v. Rabun, 232 La. 1004, 95 So.2d 635 (1957); Stabler v. Stabler, 226 La. 70, 75 So.2d 12; Brown v. Harris, 225 La. 320, 72 So.2d 746; Smith v. Smith, 217 La. 646, 47 So.2d 32.
In view of the clear expressions of C.C. Art. 160 and the jurisprudence interpreting same, and considering the assets owned by Mrs. Fellows, we conclude as did the trial judge, that she is not entitled to alimony.

ON THE QUESTION OF CHILD SUPPORT
When the parties were legally separated, the judgment contained a consent decree ordering Dr. Fellows to pay a lump sum of $2,000.00 per month for alimony to his wife and child support for four minor children (Alice and Carol Lynn were then minors). Able counsel for the Doctor contends, in effect, that the trial judge in the divorce decree awarded the sum of $2,001.00 per month child support for three children, for which there was no justification, inasmuch as there were no changed circumstances shown in either the needs of the three minor children or the ability of the father to pay. The alimony and child support emanating from the separation decree cannot be considered by us. Under our jurisprudence, alimony pendente lite, both for the wife and minor children terminates with a judgment of divorce. Worley v. Worley, supra; White v. Morris, 236 La. 767, 109 So.2d 87 (1959); Davidson v. Jenkins, 216 So.2d 682 (La.App. 3rd Cir. 1968). Therefore, the alimony and child support award contained in the separation judgment terminated when the judgment of divorce was signed. Mrs. Fellows, at the trial of the divorce, was not seeking to change a previous award of alimony, which she was not required to do, but instead, she was seeking to prove the basis for a new award.
It is evident from the record that Dr. Fellows, over the years has enjoyed a high financial standard from the income of his practice and his many investments. (The record does not indicate the amount of income received from the investments, but we are, as was the trial judge, convinced that some appreciable income is thus received.) The mode of living created by the appellant allowed his family almost unlimited financial freedoms. The older daughters and remaining three minors enjoyed unlimited charge accounts, country club memberships and summer camps, trips abroad, debut balls for those who were old enough, and many other expensive privileges made possible by their father's financial status.
Under the provisions of LSA-C. C. Arts. 227, 230, and 231, the obligation to support, maintain, and educate minor children is contracted by the parents by the *575 very act of marrying, and nourishment, lodging, support, and education are provided in proportion to the wants of those requiring and according to the circumstances of those who are to pay. Modern application of these basic rules recognizes that children are thus entitled by birthright to a life during their minority harmonious with the father's station. Paddison v. Paddison, 255 So.2d 504 (La.App. 4th Cir. 1971). This obligation includes post high school education. Pettitt v. Pettitt, 261 So.2d 687 (La.App. 2nd Cir. 1972).
Although the testimony of Mrs. Fellows indicated that the actual basic expenses for each of the three minor children for nourishment, lodging, support, and education were less than the $667.00 per month allowed for each child, nevertheless we cannot lose sight of the obvious ability of the father to pay according to his income and station in life, and the enjoyments to which the minors were accustomed when the family was together.
It is suggested that the awards of child support herein go far beyond those awarded in the Worley and Paddison cases, supra. In those cases the income and assets of the respective fathers were much less than exist in the present case. Additionally, in Worley the children were aged seven and ten. (In Paddison the ages are not given.) In the present case, the children were aged 20, 17, and 15. In this connection we recognize that as a child grows older, expenses for his support, maintenance, and education increase.
The record indicates that Mrs. Fellows has used and is using a portion of her cash assets for living expenses over and above the alimony and child support payments which she received as a result of the separation decree. Of course, she cannot legally complain in this regard in that she too under LSA-C.C. 227 has the obligation of supporting, maintaining, and educating her children. It is evident by the record, that, even with the generous child support provisions of the divorce decree, in order to subsist according to their prior mode of living she will, of necessity, need to utilize some of her own funds for the additional support of the children. Therefore, in affirming the support decree of the trial court we will establish a parity of obligations between the husband and the wife, reasonably in accord with their respective financial abilities.
Usually, in cases involving the fixing of support payments the court is called upon to balance the needs of the children against the father's debts and living expenses and his ability to pay in order to compress both within a budget restricted to the father's limited income. This is not the case herein. Here, there is no requirement for conclusions based upon mathematical ratios in view of the eminent ability of the father to support his children in the manner and mode to which they are accustomed and which he established.
It is well settled that the trial court is vested with wide discretion in fixing child support, and that only when there is a manifest abuse of that discretion will the award be disturbed. Considering all facets of this case, we find no abuse of this discretion.
The appeal herein was heard by this court on August 9, 1972, and defendant-appellant's attorney on that morning filed a supplemental brief in which our attention was directed to Act 98 of the Regular Session of the 1972 Louisiana Legislature, amending and reenacting LSA-C.C. Art. 37, and which amendment became effective July 26, 1972.
The amendment causes C.C. Art. 37 to now read as follows:
Art. 37. Age of majority
Art. 37. Persons of the age of eighteen years shall be considered of full age and until they attain that age, shall be minors. A person who is eighteen years of age or older shall be regarded as being fully emancipated, shall be considered *576 adults and shall have the same rights, duties, responsibilities and capacities as persons who are twenty-one years of age or older.
Appellant suggests that inasmuch as Carol Lynn Fellows has attained the age of majority as now prescribed by C.C. Art. 37 any child support on her behalf should be terminated as of July 26, 1972.
We opine that the point is well taken.
The judgment of divorce decreed that Dr. Fellows pay the sum of $667.00, ". . . per month for each child during their minority . . ." Since Carol Lynn became a major by act of the Legislature on July 26, 1972, she is entitled to receive alimony only until that date. Should she consider herself entitled to further alimony under the general right to support statute, C.C. Art. 229, she may bring an action therefor in her own right. Steiner v. Steiner, La.App., 235 So.2d 126.
For the above and foregoing reasons the judgment of the trial court is affirmed, at appellant's costs.
Affirmed.